UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | EP-19-CR-01259-DCG-1 |
| GABRIELA ALICIA PEREZ | § § | |

## ORDER

Presently before the Court is Defendant Gabriela Alicia Perez' "Motion to Suppress Evidence" (ECF No. 38) filed on May 4, 2019. On May 29, 2019, the Court held an evidentiary hearing on the Motion where the parties presented their evidence and arguments. *See* ECF No. 45. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

### I. BACKGROUND

On March 27, 2019, Texas Department of Public Safety Trooper Jesus Rios ("Officer Rios") conducted a traffic stop on Defendant's 2008 Buick Enclave SUV on Interstate 10 ("I-10"). Mot. at 1; Resp. at 1, ECF No. 41. Officer Rios' reason for conducting the traffic stop was his observation that the middle passenger in the third row was not wearing a seatbelt. Resp. at 1. After approaching the vehicle; informing Defendant, the driver, of the reason for the traffic stop; and asking her for her driver's license and vehicle proof of financial responsibility; Officer Rios observed a female in the front-right passenger seat, two children in the second-row seat, and three male passengers not wearing seatbelts in the third-row seat. *Id.* at 2. Officer Rios asked the three men for identification, but they did not respond. *Id.* Officer Rios asked the men again in Spanish for their identification, and two responded that they did not have any; the third man still offered no response. *Id.* After speaking to the men in the third row and the women in the

front, Officer Rios requested assistance from another officer and eventually had all five adults exit the vehicle.[1] *Id.*

After Defendant and the four adult passengers departed the vehicle, Officer Rios had the three men in the back, who were suspected of being illegal aliens, remove their shoes and had Defendant walk to his vehicle. Govt. Ex. 3, ECF No. 47. After requesting that another officer on the scene watch the three men and the front-seat passenger, Officer Rios approached Defendant and questioned her outside his vehicle. *Id.* After a few minutes of questioning, Officer Rios opened the door to the front seat of his vehicle and had Defendant sit inside while he continued with his questioning. *Id.* Based on Defendant's statements and the statements from the three men who were sitting in the third row, Officer Rios contacted United States Border Patrol ("Border Patrol") and turned Defendant and her adult passengers over to them about an hour after stopping Defendant. *Id.*; Resp. at 3. After being turned over to Border Patrol, two of the three men allegedly admitted that they did not have proper legal documentation that would allow them to enter, travel through, or remain in the United States; consequently, all persons present in Defendant's vehicle at the time of the stop were transported to Border Patrol's Sierra Blanca station for processing. Resp. at 3–4. Subsequently, on April 24, 2019, Defendant was indicted for Conspiracy to Transport Aliens, in violation of 8 U.S.C. § 1324. *Id.* at 4.

## II. STANDARD

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). However, in certain situations, the burden of persuasion shifts to the government. *Id.* For example, "[w]hen the government searches or seizes a defendant without a warrant, the

---

[1] Officer Rios called for assistance and had the adults exit the vehicle because of his knowledge that the portion of I-10 where the stop occurred was a known drug and alien trafficking area and the nervous indicators he observed from the occupants of the vehicle. Resp. at 2.

government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). Further, the government also bears the burden of proving that a confession obtained during custodial interrogation is admissible. *Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *de la Fuente*, 548 F.2d at 533. However, in order to shift the burden to the government, the defendant must first discharge his initial burden of producing some evidence, based on specific factual allegations, sufficient to make a prima facie showing of illegality. *United States v. Lyons*, 31 F. App'x 833 (5th Cir. 2002).

### III. DISCUSSION

By her Motion, Defendant seeks to exclude all physical and testimonial evidence derived and flowing from her allegedly illegal seizure and custodial interrogation. Mot. at 3. Defendant's bases for her Motion are the Fourth Amendment to the United States Constitution, *Bond v. United States*, 529 U.S. 334, 336 (2000) ("The Fourth Amendment provides that '[t]he right of the people to be free in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" (quoting U.S. Const. amend. IV)); the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV ("No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."); and the exclusionary rule, *Segura v. United States*, 468 U.S. 796, 804 (1984) ("The suppression or exclusionary rule is a judicially prescribed remedial measure [that] . . . reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" (internal citations omitted)). This case presents the Court with two determinative questions:

1) Did Officer Rios have reasonable suspicion of a seatbelt violation when he conducted the traffic stop?

2) Did Officer Rios administer a custodial interrogation prior to mirandizing Defendant?

The Court will address each of these questions in turn.

## A. Reasonable Suspicion

Defendant argues that Officer Rios did not have reasonable suspicion to execute a traffic stop for a seatbelt violation. Mot. at 1–3. The government counters that Officer Rios' stop was legal because he had reasonable suspicion supported by articulable facts that a passenger in Defendant's vehicle was committing a seatbelt violation. Resp. at 6. The Court holds that Officer Rios had reasonable suspicion to make a traffic stop for a violation of Texas Transportation Code § 545.413.

The legality of a traffic stop is analyzed under the *Terry v. Ohio* framework. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) ("Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968))). "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but the Fourth Amendment does require at least a minimal level of objective justification for making the stop. *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000). In order to find that sufficient reasonable suspicion existed to justify a stop, "a court must examine the 'totality of the

circumstances' in the situation at hand, in light of the individual officers' own training and experience, and should uphold the stop only if it finds that 'the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing.'" *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In the instant case, the government asserts that Officer Rios stopped Defendant because he saw a passenger in her vehicle not wearing a safety belt in violation of Texas Transportation Code § 545.413. Resp. at 6. Specifically, Officer Rios alleged that he spotted the middle-seat passenger in the third row not wearing a seatbelt. Resp. at 1. Defendant argues that Officer Rios could not have seen the seatbelt violation prior to the traffic stop because of the window tint on the vehicle, the placement of the passenger in the car, and the speed at which both vehicles were traveling. Mot. at 1–2. The dash camera and body camera footage neither confirm nor dispute Officer Rios' testimony that he saw a seatbelt violation. The dash camera footage does show Officer Rios trailing the vehicle for some time, then pulling next to the vehicle, passing it, and slowing to trail it again. *See* Govt. Ex. 1, ECF No. 47. This supports his testimony that he did a drive by to confirm the seatbelt violation. While the Court acknowledges that the window tint makes it difficult to see into the vehicle and Officer Rios did not see the multiple passengers in the second and third rows of the vehicle, it still finds Officer Rios' testimony on the seatbelt violation to be credible.[2] Further, after the stop, Officer Rios' body camera did confirm that the middle-seat passenger in the third row was not wearing a seatbelt.[3] *See* Govt. Ex. 3. Accordingly, the Court holds that Officer Rios had reasonable suspicion to perform a traffic stop

---

[2] Further, the Court finds a lack of support for the argument that Officer Rios stopped Defendant based on her race, ethnicity, or national origin. Mot. at 2, 3. Therefore, the Court finds no Fourteenth Amendment violation.

[3] While this is not proof that Officer Rios saw the seatbelt violation before stopping Defendant, it does lend credence to his testimony, especially with the video evidence neither supporting nor contradicting Officer Rios' proffered reason for the stop.

for the seatbelt violation. Consequently, the Court DENIES Defendant's Motion to Suppress with regard to Officer Rios' traffic stop.

## B. Custodial Interrogation

Next, Defendant asserts that Officer Rios subjected her to a custodial interrogation without first mirandizing her in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Mot. at 3. The government responds that Defendant was not under custodial interrogation prior to Defendant being mirandized. The Court holds that Officer Rios conducted a custodial interrogation prior to mirandizing Defendant.

"*Miranda* warnings must be administered prior to 'custodial interrogation.'" *United States v. Coleman*, 610 F. App'x 347, 352 (5th Cir. 2015); *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (*en banc*) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "A suspect is . . . 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* at 596. "Two discrete [inquiries] are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *J.D.B. v. N. Carolina*, 564 U.S. 261, 270 (2011)). A determination of whether a defendant is "in custody" for *Miranda* purposes depends on the "totality of circumstances." *Id.* Some important factors include: (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or

leave. *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015). Custody for *Miranda* purposes requires a greater restraint on freedom than seizure under the Fourth Amendment. *Bengivenga*, 845 F.2d at 598. It is well-established that ordinary traffic stops do not place a person "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 437–39 (1984) (finding the brevity, spontaneity, and public nature of normal traffic stops, and the small number of officers involved, renders the stops non-custodial).

In this case, it was not an ordinary traffic stop. Officer Rios conceded that within the first minute of the stop he had confirmed the seatbelt violation, which concluded that investigation. However, Officer Rios still held Defendant for over an hour, ordered her out of the vehicle, took her into his vehicle, and questioned her. Resp. at 2; Govt. Ex. 3. Further, Officer Rios ordered the three passengers in the third row out of the vehicle and made them remove their shoes while they waited for Border Patrol. Govt. Ex. 3. With regard to Defendant, Officer Rios questioned her at length in his vehicle, used accusatory and aggressive questioning, and gave her no indication that she was free to leave. *Id.* Officer Rios' aggressive and hostile questioning aimed at eliciting incriminating responses from Defendant undoubtedly qualified as an interrogation under *Miranda*.[4] *See United States v. Arellano-Banuelos*, 912 F.3d 862, 866 (5th Cir. 2019) ("As the Supreme Court has explained, 'the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police *should know* are reasonably likely to

---

[4] Officer Rios made statements such as: "There's good people, and there's people that are criminals. Alright? My job is to find criminals . . . My job is to find people who are breaking the law," "I can see you right now, and I can tell you that you are lying to me. But at the same time, I can tell you are a good person . . . Start telling me the truth to be a good person or . . . you can start to lie and be on the criminal side," and "I'm going to ask you one more time and one time only . . . I know exactly what is going on, but I need you to tell me." Govt. Ex. 3. Officer Rios further asked questions aimed at eliciting incriminating information, including whether Defendant knowingly transported illegal aliens, and accused Defendant of being dishonest after certain responses to his questions. *Id.*

elicit an incriminating response from the suspect.'" (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980))). Further, Defendant was "in custody" for purposes of Miranda because she submitted to Officer Rios' authority and a reasonable person would not feel that she was free to leave.[5] *See McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) ("A seizure occurs 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.' . . . Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the assertion of authority' is necessary." (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) & *California v. Hodari D.*, 499 U.S. 621, 626 (1991))). Accordingly, since Officer Rios conducted a custodial interrogation before mirandizing Defendant, all of Defendant's pre-*Miranda* statements must be suppressed.[6]

Further, the Court must also consider whether to suppress Defendant's post-*Miranda* statements. The Court's first inquiry is whether Officer Rios used a deliberate two-step strategy to circumvent *Miranda*. *See United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006) ("[I]f the district court determined that Courtney's first two statements were obtained in violation of *Miranda*, the next inquiry would have been whether a deliberate two-step strategy was used."). The Court finds that Officer Rios did use a deliberate two-step strategy to circumvent *Miranda*. Officer Rios took Defendant into custody and then intentionally used accusatory and coercive questioning aimed at eliciting incriminating information before mirandizing Defendant. After

---

[5] Officer Rios pulled Defendant over using his emergency lights. Govt. Ex. 1; Resp. at 2. He ordered Defendant out of her vehicle and began questioning her in an accusatory manner. Govt. Ex. 3. He then had her sit in the front seat of his vehicle while he continued with his questioning. *Id.* He also gave her no indication that she was free to go and held her for over 30 minutes, most of which were spent in his vehicle, before mirandizing her. *Id.* The five factors discussed in *United States v. Wright* all support a finding that Defendant was in custody for purposes of *Miranda*. *See* 777 F.3d at 775.

[6] The government did not argue that Officer Rios had probable cause to take Defendant into custody. Even Officer Rios acknowledged to another officer in the body camera footage that he lacked probable cause to arrest Defendant on state charges because he had no evidence to prove the concealment element of the Texas offense. Govt. Ex. 3.

Officer Rios mirandized Defendant, he attempted to have her acknowledge her pre-*Miranda* statements while also seeking the evidence needed to prove the final element for the state-law charge. *Cf. United States v. Hernandez*, 200 F. App'x 283, 287 (5th Cir. 2006) ("The officer 'confronted' Seibert with the statements that she made prior to being given *Miranda* warnings and 'pushed her to acknowledge them' when she tried to retreat from her earlier incriminating statements after being given *Miranda*." (discussing *Missouri v. Seibert*, 542 U.S. 600 (2004)).

The Court's next inquiry is whether Officer Rios took curative measures before seeking any postwarning statements. *See Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment) ("If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made."); *Courtney*, 463 F.3d at 338 (announcing Justice Kennedy's concurrence as the holding from *Seibert* that the Fifth Circuit would follow). Justice Kennedy stated in his explanation of the "curative measures" element:

> Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver. For example, a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. Alternatively, an additional warning that explains the likely inadmissibility of the prewarning custodial statement may be sufficient.

*Seibert*, 542 U.S. at 622 (internal citations omitted). Officer Rios failed to take the sort of curative measures described by Justice Kennedy. There was no substantial break in time between the prewarning statements and the *Miranda* warning. There were no changes in the context of the interrogation to allow Defendant to appreciate that it had taken a new turn. Furthermore, Officer Rios did not give Defendant an additional warning explaining the likely

inadmissibility of the prewarning statements. Consequently, the Court must suppress all of Defendant's postwarning statements to Officer Rios.

As a final matter, the Court considers whether to suppress Officer Rios' report to Border Patrol and Border Patrol's report using the information gleaned from Officer Rios. Consistent with the Court's findings and holdings on *Miranda*, Officer Rios' report must be suppressed because it is tainted by the suppressed statements made by Defendant. *See Segura, supra*, 468 U.S. at 804 ("The suppression or exclusionary rule is a judicially prescribed remedial measure [that] . . . reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" (internal citations omitted)). Further, Border Patrol's report based on the information provided by Officer Rios must also be suppressed for the same reasons. *See United States v. Otero*, 176 F.3d 479 (5th Cir. 1999) ("A federal agent may not prosecute a defendant by using evidence obtained by state officers in violation of the federal Constitution."). Accordingly, Defendant's Motion to Suppress is GRANTED with regard to the violation of Defendant's *Miranda* rights.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Gabriela Alicia Perez' "Motion to Suppress Evidence" (ECF No. 38) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** with respect to Officer Rios' traffic stop of Defendant's vehicle. The Motion is **GRANTED** with respect to the violation of Defendant's *Miranda* rights. The Court hereby **SUPPRESSES** Defendant's prewarning and postwarning statements to Officer Rios and the documents created by Officer Rios and Border Patrol using information from those statements.

So ORDERED and SIGNED this 17th day of June 2019.

/s/ David C. Guaderrama
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE